UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FS GIIKER TECHNOLOGY CO., LTD., <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL GABRIEL CRUZ-PIZARRO, et al., <br><br> Defendants. | Case No. 25-cv-06949-JCS <br><br> **ORDER DENYING EX PARTE APPLICATION FOR WRIT OF ATTACHMENT** <br><br> Re: Dkt. No. 6 |

## I. INTRODUCTION

Plaintiff FS Giiker Technology Co., Ltd. ("Giiker") alleges that Defendant Michael Gabriel Cruz-Pizarro ("Michael") breached an implied contract with Giiker and committed fraud in connection with Giiker's online Tik Tok store. According to Giiker, Michael owes Giiker $321,620.35 in proceeds from the store. Giiker brings an Ex Parte Application for Writ of Attachment ("Application) asking the Court to attach a bank account belonging to Michael into which the funds were originally deposited and the home in which Michael and two family members—who are also named as defendants in this case – reside. The Court DENIES Giiker's application for the reasons set forth below.[1]

## II. BACKGROUND

### A. The Complaint

In the complaint, Giiker alleges that in July 2022, Michael contacted Giiker via WhatsApp

---

[1] An application for a writ of attachment is considered a non-dispositive matter over which a magistrate judge has jurisdiction. *Shaper v. Zadek*, No. 21-CV-00493-TSH, 2021 WL 411359, at *1 (N.D. Cal. Feb. 5, 2021) (citing *Illumination Dynamics Co. v. Pac. Lighting Sols. LLC*, No. 14-0078 SBA, 2014 WL 4090562, at *2 (N.D. Cal. Aug. 18, 2014); *Bd. of Trs. for Laborers Health & Welfare Tr. Fund for N. Cal. v. Michael Heavey Constr., Inc.*, No. 18-CV-6119 JSC, 2018 WL 5778296, at *2 (N.D. Cal. Nov. 1, 2018)).

1  and "proposed a business collaboration to promote Plaintiff's products through social media and
2  assist with drop shipping fulfillment."  Compl. ¶ 8.  "Michael presented himself as a content
3  creator with hundreds of thousands of followers and offered to promote Plaintiff's products
4  through TikTok videos and livestreams targeting U.S. consumers."  *Id.* According to Giiker,
5  Michael and Giiker "agreed to the collaboration under specific terms: Michael would post 12
6  videos or livestreams every 14 days on his social media accounts, and in return, Plaintiff would
7  pay Michael $2,000 every two weeks."  *Id.* ¶ 9.

8        Giiker alleges that in April 2023, "Michael proposed that [Giiker] open a TikTok Shop
9  account using his personal and banking information."  *Id.*  ¶ 10.  "Michael claimed this would
10  allow the account to benefit from TikTok's U.S. traffic algorithm, increase product visibility, and
11  streamline order fulfillment within the United States."  *Id.*  Giiker alleges that on May 4, 2023,
12  "with Michael's assistance, [Giiker] registered a TikTok Shop account under the name "GiiKER"
13  (the 'TikTok Shop'), using Michael's personal and banking information."  *Id.*  According to
14  Giiker, "[t]he parties agreed that Michael would only serve as the nominal holder of the account
15  and that all revenue generated would belong solely to [Giiker]."  *Id.*  Giiker alleges that in August
16  2023, the parties further agreed that "Michael would withhold applicable taxes from the TikTok
17  Shop revenue" and Michael "agreed to remit the net proceeds" to a bank account designated by
18  Giiker.  *Id.*  ¶ 12.

19        According to Giiker, from May 2023 to December 2023, 9,946 product units were sold
20  through the TikTok Shop account, resulting in gross proceeds of $380,120.35.  *Id.* ¶ 13. In August
21  2023, Giiker began asking Michael to transfer the proceeds from the Tik Tok store to its
22  designated bank account.  *Id.* ¶ 14.  "Michael initially agreed but stated that he needed to consult
23  with his accountant regarding tax matters."  *Id.*  Despite "repeated assurance[s]" that the funds
24  would be transferred soon, Michael never made any payments to Giiker.  *Id.*  ¶ 15.

25        According to Giiker, on September 26, 2024, "through counsel, the parties reached an
26  agreement regarding the outstanding balance of $321,620.35, to be repaid under specific terms."
27  *Id.* ¶ 16. "However, Michael ultimately refused to execute the written agreement and failed to
28  make any payments."  *Id.*  Michael's attorney told Giiker in December 2024 "that Michael would

United States District Court
Northern District of California

not be able to make the payment, claiming that his account had no available funds." *Id.*

Giiker alleges that Michael was acting in concert with Defendants Sniffy LLC, Edgardo Cruz and Elisa Cruz. *Id.* ¶¶ 18-20. In particular, Giiker alleges, on information and belief, that "in or around late 2023, Michael transferred control of the TikTok Shop account from his personal name to Defendant SNIFFY LLC." *Id.* ¶ 18. According to Giiker, "[p]ublic records confirm that SNIFFY LLC is registered at 170 Plumas Court and Michael serve as its sole manager and controlling member." *Id.* Giiker alleges that 170 Pumas Court is a residence that is jointly owned and occupied by Edgardo and Elisa Cruz, who are relatives of Michael. *Id.* ¶ 19. Giiker alleges on information and belief that "Edgardo and Elisa have been aware of and actively assisted Michael's efforts to conceal, retain, or redirect Plaintiff's funds" and have "played a role in enabling Michael's continued access to and use of the 170 Plumas Court residence as the central location for his business activities, including those conducted through SNIFFY LLC." *Id.* Giiker further alleges that "Edgardo Cruz is associated with a real estate business operating under the fictitious business name Royal Homes Real Estate, which is also registered at the 170 Plumas Court" address. *Id.* ¶ 20. "[B]ased on the overlapping residential and business addresses, close family relationships, and coordinated conduct among Defendants, Plaintiff alleges that **Defendants have operated in concert and as alter egos of one another to hinder, delay, or defraud Plaintiff's ability to recover the funds rightfully owed**." *Id.* (emphasis in original).

Giiker asserts the following claims: 1) breach of implied-contract-in fact (against Michael only); 2) fraud (against all defendants); 3) Unjust enrichment (against all defendants); and 4) alter ego liability (against all defendants). It seeks general damages in an amount not less than $321,620.35 as well as punitive and exemplary damages and restitution and disgorgement of profits.

### B. The Application

In the Application, Giiker asks the Court for a right to attach order and writ of attachment in the amount of $321,620.35 "directed at all bank accounts held in the name of Defendant Michael Gabriel Cruz-Pizarro that were used to receive, transfer, or hold funds generated from Plaintiff's TikTok Shop operations, including but not limited to a U.S. bank account ending in

3

1  2683." Notice of Motion at 1. It further requests a right to attach order and writ of attachment in
2  the same amount "against the real property located at 170 Plumas Court, San Bruno, California
3  94066, titled in the names of Defendants Edgardo Cruz and Elisa Cruz, on the grounds that the
4  property is used to conceal misappropriated funds and is subject to attachment under the alter ego
5  doctrine." *Id.* at 1-2.

6  Giiker brings the Application ex parte on the grounds that "Defendants have engaged in a
7  protracted pattern of fraud, deceit, and active concealment, including the surreptitious transfer of
8  assets." *Id.* at 2. According to Giiker, "[g]iven this conduct and Defendants' demonstrated bad
9  faith, there is a substantial danger that providing notice of this application would prompt
10 Defendants to immediately transfer, conceal, or otherwise dissipate the very funds and property
11 Plaintiff seeks to attach, rendering any subsequent order from this Court meaningless." *Id.*

12 Giiker offers two declarations to establish "the probable validity of its claims and the
13 urgent need for ex parte relief." Memorandum of Authorities in Support of Ex Parte Application
14 for Writ of Attachment ("Memorandum") at ECF p. 5. First, Giiker offers a declaration of its
15 attorney, Marjorie Ouyang, whose description of the underlying facts mirror the factual allegations
16 in the complaint. Ouyang Decl. ¶¶ 1-9. Ouyang further states that "it is [her] professional
17 judgment that providing notice to the Defendants would create an immediate and substantial risk
18 of irreparable harm" in light of Defendants' "pattern of fraudulent and evasive conduct[.]" *Id.* ¶
19 12. In particular, Ouyang states, "Michael made repeated false promises for months,
20 surreptitiously transferred control of the revenue generating TikTok Shop account to a shell LLC
21 he controls, and ultimately had his attorney claim he had 'no available funds.' "

22 Giiker also has submitted a declaration from its legal representative, Haocong Zheng,
23 whose statements, like those of Ouyang, mirror the factual allegations in the Complaint. *See*
24 *generally* Zheng Decl.

25 **III.   ANALYSIS**
26 **A. Legal Standard**
27 A federal court applies the attachment law and procedures of the state in which it is
28 located. Fed. R. Civ. P. 64; *Reebok Int'l v. Marnatech Enters.*, 970 F.2d 552, 558 (9th Cir. 1992).

4

California Code of Civil Procedure section 485.220, which provides for the issuance of a prejudgment right to attach order on an ex parte basis, states:

> (a) The court shall examine the application and supporting affidavit and, except as provided in Section 486.030, shall issue a right to attach order, which shall state the amount to be secured by the attachment, and order a writ of attachment to be issued upon the filing of an undertaking as provided by Sections 489.210 and 489.220, if it finds all of the following:
>
> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery upon the claim upon which the attachment is based.
>
> (4) The affidavit accompanying the application shows that the property sought to be attached, or the portion thereof to be specified in the writ, is not exempt from attachment.
>
> (5) The plaintiff will suffer great or irreparable injury (within the meaning of Section 485.010) if issuance of the order is delayed until the matter can be heard on notice.
>
> (6) The amount to be secured by the attachment is greater than zero.

Cal. Code Civ. Proc. § 485.220.

Section 485.010(a) provides, in relevant part, as follows:

> a) Except as otherwise provided by statute, no right to attach order or writ of attachment may be issued pursuant to this chapter unless it appears from facts shown by affidavit that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.
>
> (b) The requirement of subdivision (a) is satisfied if any of the following are shown:
>
> (1) Under the circumstances of the case, it may be inferred that there is a danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed until the matter could be heard on notice.
>
> (2) Under the circumstances of the case, it may be inferred that the defendant has failed to pay the debt underlying the requested attachment and the defendant is insolvent in the sense that the defendant is generally not paying his or her debts as those debts become due, unless the debts are subject to a bona fide dispute. Plaintiff's affidavit filed in support of the ex parte attachment shall

        state, in addition to the requirements of Section 485.530, the known undisputed debts of the defendant, that the debts are not subject to bona fide dispute, and the basis for plaintiff's determination that the defendant's debts are undisputed.

        (3) A bulk sales notice has been recorded and published pursuant to Division 6 (commencing with Section 6101) of the Commercial Code with respect to a bulk transfer by the defendant.

        (4) An escrow has been opened pursuant to the provisions of Section 24074 of the Business and Professions Code with respect to the sale by the defendant of a liquor license.

        (5) Any other circumstance showing that great or irreparable injury would result to the plaintiff if issuance of the order were delayed until the matter could be heard on notice.

Cal. Code. Civ. Proc. § 485.010.

      California's attachment law is subject to strict construction. *Epstein v. Abrams*, 57 Cal. App. 4th 1159, 1167-68 (1997). "[I]ssuance of a writ of attachment prior to a noticed hearing is appropriate only 'for use in exceptional circumstances.' " *Bd. of Trs. for Laborers Health & Welfare Tr. Fund for N. California v. Michael Heavey Constr., Inc.*, No. 18-CV-06119-JSC, 2018 WL 5778296, at *1 (N.D. Cal. Nov. 1, 2018) (quoting Cal. Civ. Proc. Code § 484.010 law revision commission's comments to 1974 addition).

## B. Discussion

      As a threshold matter, the Court must determine whether Giiker "will suffer great or irreparable injury (within the meaning of Section 485.010) if issuance of the order is delayed until the matter can be heard on notice." Cal. Code Civ. Proc. § 485.220(a)(5). The Court finds that it has not.

      Giiker relies on the statements of its attorney and a legal representative that Michael made "false promises" that he would make payments soon but ultimately his attorney represented that Michael had "no funds available in his account." *See* Zheng Decl. ¶ 10. As an aside, it is unclear why Giiker seeks to attach a bank account that apparently has already been emptied. Even assuming that there are funds in the account to attach, however, the Court finds that the evidence Giiker has offered is insufficient to establish exigent circumstances. In particular, even assuming that "it may be inferred that [Michael] has failed to pay the debt underlying the requested attachment[,]" Giiker has not offered any evidence that Michael is "insolvent in the sense that

[he] is *generally* not paying his . . . debts as those debts become due[,]" apart from the debt that is at issue in this case. Cal. Civ. Proc. Code § 485.010(b)(2) (emphasis added). Given that Michael has allegedly refused to sign a settlement agreement obligating him to pay that debt, the Court concludes that it is "subject to a bona fide dispute" and therefore, that that debt alone is not sufficient to establish exigent circumstances.

The Court further notes that Giiker's fraud allegations are conclusory and the statements in the Ouker and Zheng Declarations relating to Micheal's communications relating to the terms of the parties' agreement are hearsay. Of particular concern is Giiker's failure to provide the underlying communications from Michael in which he purportedly agreed that all proceeds from the store belonged to Giiker and later purportedly did not dispute that the money in his bank account was owed to Giiker. Nor has Giiker pointed to any conduct on Michael's part that evidences his agreement that all proceeds from the Tik Tok Store (minus taxes) were to be turned over to Giiker.

The allegations as to Edgardo and Elisa Cruz are even thinner, with the only evidence of alter ego liability or that Edgardo and Elisa Cruz were acting in concert with Michael being the fact that both Edgardo and Michael listed their home address – where the three reside as a family – for their businesses. Given that Michael was engaged in online content creation and Edgardo's business was apparently a real estate business, the use of the same home address for both businesses does not raise a strong inference that Edgardo (much less Elisa) was acting in concert with Michael so as to justify attaching Edgardo and Elisa's home.

In any event, Giiker has offered no evidence that any defendant was considering transferring or encumbering the property such that it would be unavailable to satisfy a judgment were Giiker to prevail on its claims. *See Connecticut v. Doehr*, 501 U.S. 1, 16 (1991) (recognizing that a prejudgment attachment of real property without notice is permissible only upon showing of exigent circumstances that would render the property unavailable to satisfy a judgment and holding that attachment of real property was improper where there was no evidence that the owner of the property "was about to transfer or encumber his real estate or take any other action during the pendency of the action that would render his real estate unavailable to satisfy a judgment").

7

1  Therefore, Giiker has not established exigent circumstances that would justify attaching
2  Defendants' residence.

3  **IV.    CONCLUSION**
4  For the reasons stated above, the Court DENIES Giiker's ex parte application.
5  **IT IS SO ORDERED.**

7  Dated:  September 17, 2025

           _____
           JOSEPH C. SPERO
           United States Magistrate Judge